D. EDWARD HAYS, #162507
ehays@marshackhays.com
AARON E. DE LEEST, #216832
adeleest@marshackhays.com
CHAD V. HAES, #267221
chaes@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Richard A. Marshack,
Plaintiff and Trustee of the LPG Liquidation Trust

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>Debtor. | Case No. 8:23-bk-10571-SC<br><br>Chapter 11<br><br>Adv. No. |
| RICHARD A. MARSHACK, Trustee of the LPG Liquidation Trust,<br><br>Plaintiff,<br><br>v.<br><br>DARLENE COLLINS, an individual and DOES 1 through 20, inclusive,<br><br>Defendant. | COMPLAINT FOR:<br><br>(1) AVOIDANCE, RECOVERY, AND PRESERVATION OF ACTUAL FRAUDULENT TRANSFERS [11 U.S.C. §§ 544, 548(a)(1)(A), 550, 551; CAL. CIV. CODE §§ 3439.04(a)(1) AND 3439.07];<br><br>(2) AVOIDANCE, RECOVERY, AND PRESERVATION OF CONSTRUCTIVE FRAUDULENT TRANSFERS [11 U.S.C. §§ 544, 548(a)(1)(B); 550, 551; CAL. CIV. CODE §§ 3439.04(a)(2), 3439.05, AND 3439.07]; AND<br><br>(3) DISALLOWANCE OF CLAIMS HELD BY DEFENDANT [11 U.S.C. § 502(d)]<br><br>[STATUS CONFERENCE TO BE SET BY COURT] |

/ / /

/ / /

/ / /

1
COMPLAINT

Richard A. Marshack, solely in his capacity as Trustee of the LPG Liquidation Trust, files this complaint against Darlene Collins, an individual ("Defendant") and Does 1 through 20, inclusive, (collectively, "Doe Defendants"), and alleges as follows:

## Statement of the Case

1. A bankruptcy trustee may avoid and recover actual and constructively fraudulent transfers made by a debtor. In this case, while insolvent, Debtor transferred at least $50,000 to Defendant within four years prior to bankruptcy (collectively, the "Transfer"). Trustee alleges that some or all of the Transfer was then subsequently transferred by Defendant to one or more of the Doe Defendants. Reasonably equivalent value was not provided the Debtor in exchange for the Transfer and, as evidenced below, the transfer was made with actual intent to hinder, delay, or defraud Debtor's creditors.

2. Under these facts, the Trustee can avoid the Transfer and recover from Defendant as the "initial" transferee of such transfer and/or from Doe Defendants as "subsequent" transferees who did not take in good faith, for value, and without knowledge of the avoidability of such transfer. Plaintiff seeks to avoid, recover, and preserve such fraudulent transfer for the benefit of the Estate.

## Statement of Jurisdiction and Venue

3. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 in that this action arises in and relates to the bankruptcy case pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division, entitled *In re The Litigation Practice Group, P.C.*, Bankruptcy Case Number 8:23-bk-10571-SC.

4. Plaintiff has standing to bring this adversary proceeding pursuant to Provision V.E. of the Modified First Amended Joint Chapter 11 Plan of Liquidation, confirmed by the Court on September 9, 2024, as Dk. No. 1646. The Plan provides that the estate's litigation claims, including avoidance claims, were transferred to the LPG Liquidating Trust. Plaintiff brings these claims on behalf of the Trust.

5. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), and (O), and this Court has Constitutional authority to enter a final judgment on these claims. To the extent any claim for relief contained herein is determined not to be a non-core

proceeding or a *Stern*-claim, Plaintiff consents to the entry of final judgment and orders by the Bankruptcy Court.

6. Venue properly lies in the Central District of California in that this adversary proceeding arises in or is related to a case under Title 11 of the United State Code as provided in 28 U.S.C. §§ 1408 and 1409.

**Parties**

7. The Litigation Practice Group P.C. (previously defined as "Debtor") is a corporation organized under the laws of the State of California, that had its principal place of business in Tustin, California. During all relevant times prior to bankruptcy, Daniel S. March ("Mr. March") was the Chief Executive Officer of Debtor.

8. On March 20, 2023 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, initiating bankruptcy Case No. 8:23-bk-10571-SC ("Bankruptcy Case") in the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

9. Richard A. Marshack (previously defined as "Trustee" or "Plaintiff") was the duly-appointed, qualified, and acting Chapter 11 Trustee for the Debtor's bankruptcy estate ("Estate"). Pursuant to the confirmed Plan, the Trustee now serves as Trustee of the LPG Liquidation Trust, which now owns all of the litigation claims, including the Estate's avoidance actions.

10. Plaintiff alleges that, at all relevant times, Defendant was an individual residing in the State of California.  Defendant's address is 2902 Via Hidalgo, San Clemente, CA 92673.

11. Plaintiff is ignorant of the true names and capacities of the Doe Defendants and, therefore, sues said defendants under such fictitious names. Plaintiff will amend this Complaint to reflect the true names and capacities of such defendant(s) when they have been ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named individuals and/or entities are responsible in some manner for the occurrences alleged herein and proximately caused Plaintiff's damages by their conduct. Plaintiff is informed and believes, and based thereon alleges, that the fictitiously named defendants may constitute individuals, unknown trusts, partnerships, related entities, owners, principals, shareholders, insiders, alter egos, co-conspirators,

and aiders and abettors that: (a) received transfers from Debtor as an initial, immediate, or mediate transferee; (b) received transfers from Defendant as a mediate transferee; (c) directed or controlled Defendant's conduct and, as such, were responsible in some manner for the occurrences alleged herein; and/or (c) were used to shield Debtor's assets from collection, levy or execution, and to otherwise, hinder, delay and defraud the Debtor and its creditors.

## General Allegations

### A.  The Bankruptcy Case

12.  Pre-petition, Debtor was a law firm that provided consumer debt resolution services to more than 50,000 clients nationwide.

13.  Tony Diab ("Mr. Diab") owned, operated, dominated and controlled Debtor.

14.  On May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case. To the extent that Trustee was not appointed until after any of the events alleged in this Complaint, the allegations are based on information and belief. *See Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, at *5 (C.D. Cal. Aug. 7, 2014); *Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, at *4 (C.D. Cal. July 31, 2013).

### B.  Fraudulent Entities

15.  To keep Debtor's interests in property outside the reach of creditors, including funds paid by Debtor's clients pursuant to their written Legal Services Agreements with Debtor, the LPG Insiders created one or more sham entities to receive and hold Debtor's property.

16.  The Debtor's primary assets were its rights to receive monthly ACH payments from its consumer clients. In the full year prior to bankruptcy, Debtor's Statements of Financial Affairs evidence that it received revenues totaling approximately $155 million.

17.  Under applicable state and federal laws, ACH pulls from a consumer's bank account can occur until the party initiating the payments obtains the consumer's express written consent.

18.  With respect to the ACH pulls, the consumer clients only consented to the Debtor initiating the payments from their accounts.

///

19. With respect to the ACH pulls, the funds were derived from consumer clients that never consented to any law firm other than the Debtor representing them.

### C.  Ponzi Scheme

20. This Court has recognized that Debtor operated a Ponzi scheme by using funds provided by former investors to attract new investors hoping for very high returns. *See* Dk. No. 1545, fn. 5.

21. The Ponzi Scheme Presumption establishes a debtor's "intent to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme." *Merrill v. Abbott* (*In re Independent Clearing House Co.*), 77 B.R. 843, 860 (D. Utah 1987). "Knowledge to a substantial certainty constitutes intent in the eyes of the law, cf. Restatement (Second) of Torts § 8A (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them." *Id*. A trustee in bankruptcy is not required to show that an operator of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114 F.4th at 1153 (9th Cir. 2024).

22. "[I]f all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share." *In re Independent Clearing House Co.* 77 B.R. at 859. In such a situation, the use of the defendant's money cannot objectively be called "reasonably equivalent value." *Id*. Therefore, "[t]he trustee can avoid the transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent. Therefore, they constitute 'property of the estate,' and the trustee can recover them." *Id*. at 853 n.17 (citations omitted).

23. Based on the Ponzi Scheme presumption, the Court can infer that the Debtor had the intent to defraud investors within the meaning of 11 U.S.C. § 548(a)(1). Since the transfers by Debtor to third parties, including Defendants, were made with the intent to further the Ponzi scheme, the Debtor did not receive an objectively reasonable equivalent value for such transfers, and the Trustee can avoid any such transfers because they were preferential and/or fraudulent.

/ / /

/ / /

### D.  Prepetition Creditors and Lawsuits

24. Debtor's Schedule E/F, filed on April 4, 2023, as Dk. No. 33, lists: (a) 11 unsecured creditors with priority unsecured claims totaling $374,060.04; and (b) 58 nonpriority unsecured creditors with scheduled claims totaling $141,439,158.05.

25. The claims register in this Bankruptcy Case includes 2,554 proofs of claim, totaling in excess of $424 million of claims asserted against the Estate.

26. At least 14 UCC-1 statements were of record securing alleged debts of the Debtor as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then owned or thereafter acquired or provided evidence of the assignment or sale of substantial portions of the Debtor's future income. They secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (a) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (b) approximately $15 million dollars owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (c) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 purportedly secured by a UCC statement filed on or about May 28, 2021; and (d) approximately $1.5 million dollars owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.

27. Debtor's balance sheets for the 36 months ending December 31, 2021, show approximately $17,900,000 in total assets at its highest point in November 2021. This amount is significantly less than the $424 million of claims filed.

28. Debtor's Statement of Financial Affairs, filed on April 4, 2023, as Dk. No. 34, reflects 15 pending lawsuits against Debtor as of the Petition Date. The lawsuits date back to October 18, 2021 (*Fundura v. The Litigation Practice Group P.C. et al.*, Supreme Court of New York Index No. 613192-2021) and are as recent as March 10, 2023 (*Diverse Capital LLC v. The Litigation Practice Group P.C. et al.*, Supreme Court of New York Index No. 135614-2023).

/ / /

/ / /

### E.  Debtor's Insolvency

29. Debtor was insolvent when the Transfer occurred as evidenced by: (a) the 14 UCC-1 statements reflecting secured liens against the Debtor's owned and after-acquired assets and the assignment or sale of substantial portions of the Debtor's future income; (b) the priority and non-priority unsecured debt of nearly $142 million listed in Debtor's schedules; (c) the $424 million of creditor claims filed in this Bankruptcy Case; and (d) Debtor's balance sheets reflecting, at its highest point, $17.9 million of assets in November 2021.

30. Moreover, insolvency is presumed as a matter of law where, as in this Bankruptcy Case, the debtor operated a Ponzi scheme. *See, e.g., Glob. Money Mgmt., L.P. v. McDonnold*, No. 06CV34, 2008 U.S. Dist. LEXIS 128733, at *15 (S.D. Cal. Feb. 27, 2008) (concluding that "if a Ponzi scheme is proven, then the debtor is proven insolvent from the time of its inception").

### F.  The Subject Transfer

31. During the four-year period prior to the Petition Date, Debtor transferred cash to Defendant and/or the Doe Defendants. The full extent of the Transfer(s) will be proven at trial, but are in an amount not less than $50,000 (previously defined as "Transfer") as set forth in the chart attached hereto as **Exhibit 1.**

32. The Transfer is a "transfer" of Debtor's interest in property as that term is defined in 11 U.S.C. § 101(54).

33. Plaintiff alleges that Debtor was insolvent when the sham entities received the Debtor's property or became insolvent as a result of such diversion of assets.

34. Plaintiff alleges that Debtor was insolvent when the Transfer occurred or became insolvent as a result of such transfer.

35. Plaintiff alleges that Debtor did not receive reasonably equivalent value in exchange for or in connection with the Transfer.

36. Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover the Transfer or its value from Defendant and Doe Defendants as initial or subsequent transferees.

37. Under 11 U.S.C. § 551, avoided transfers are automatically preserved for the benefit of the Estate.

### G.　Due Diligence

38.　On February 11, 2025, Plaintiff caused a letter to be mailed to Defendant ("First Letter") requesting documents and information to substantiate the Transfer, to assess the purpose of the Transfer, and to evaluate any potential defenses to Plaintiff's avoidance and recovery of the Transfer. Plaintiff received no response to the First Letter.

39.　Prior to filing this Complaint, Plaintiff's counsel conducted an electronic search of Debtor's paper files and accounting records, including Debtor's Quickbooks files, which records and files are now stored electronically. Plaintiff's search of the subject records and files revealed no apparent defenses to the alleged claims.

## First Claim for Relief

## Avoidance, Preservation, and Recovery of Actual Fraudulent Transfer

## 11 U.S.C. §§ 544, 550, 551; Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07

## (Against all Defendants)

40.　Plaintiff incorporates by reference Paragraphs 1 through 39 and realleges these paragraphs as though set forth in full.

41.　Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code § 3439.04(a)(1).

42.　The Transfer was of property of Debtor.

43.　The Transfer was made within four years of the Petition Date.

44.　The Transfer was made with the actual intent to hinder, delay, or defraud Debtor's creditors.

45.　At the time the Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of the Transfer and on the Petition Date.

46.　Debtor had been sued or threatened with suit before the Transfer occurred.

47.　Debtor incurred substantial debt shortly before or shortly after the Transfer occurred.

/ / /

/ / /

48. The LPG Insiders caused Debtor to abscond and delay the discovery of substantial assets of the Debtor pursuant to the diversion of Debtor's funds, client files, and assets to sham entities.

49. Debtor actively concealed its beneficial interest in the Transfer and made the payments to Defendants with actual intent to hinder, delay, or defraud other creditors of the Debtor.

50. The various sham entities, who benefitted from the receipt of funds improperly diverted away from Debtor, would be considered insiders under Cal. Civ. Code § 3439.04(b)(1).

51. Debtor received less than reasonably equivalent value in exchange for the Transfer. Defendant and/or Doe Defendants received at least $50,000 of property belonging to Debtor.

52. The Transfer was made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfer.

53. Plaintiff alleges that Defendant and/or Doe Defendants did not receive the Transfer in good faith, for value, and without knowledge of its avoidability.

54. Based on the foregoing, Plaintiff may avoid the Transfer pursuant to 11 U.S.C. § 544 and California Civil Code § 3439.04(a)(1).

55. Based on the foregoing, Plaintiff may recover and preserve the Transfer from Defendant and/or Doe Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

**Second Claim for Relief**

**Avoidance, Preservation, and Recovery of Constructive Fraudulent Transfer**

**11 U.S.C. §§ 544, 550, 551; Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07**

**(Against all Defendants)**

56. Plaintiff hereby incorporates by reference Paragraphs 1 through 39 and realleges these paragraphs as though set forth in full herein.

57. Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code §§ 3439.04(a)(2) and 3439.05.

58. Debtor did not receive reasonably equivalent value in exchange for the Transfer.

59. The Transfer was made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfer.

60. At the time the Transfer was made, Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of Debtor were unreasonably small in relation to the business or transaction.

61. At the time the Transfer was made, Debtor intended to incur, or believed or reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as they became due.

62. At the time the Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of the Transfer and on the Petition Date.

63. The various sham entities, who benefitted from the receipt of funds improperly diverted away from Debtor, would be considered insiders under Cal. Civ. Code § 3439.04(b)(1).

64. The Transfer was made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfer.

65. Plaintiff alleges that Defendant and/or Doe Defendants did not receive the Transfer in good faith, for value, and without knowledge of its avoidability.

66. Based on the foregoing, Plaintiff may avoid the Transfer pursuant to 11 U.S.C. § 544 and California Civil Code §§ 3439.04(a)(2) and 3439.05.

67. Based on the foregoing, Plaintiff may recover and preserve the Transfer from Defendant and/or Doe Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

/ / /

/ / /

/ / /

/ / /

/ / /

# Third Claim for Relief

# Avoidance, Preservation, and Recovery of Actual Fraudulent Transfer

# 11 U.S.C. §§ 548(a)(1)(A), 550 & 551

# (Against all Defendants)

68. Plaintiff hereby incorporates by reference Paragraphs 1 through 39 and realleges these paragraphs as though set forth in full herein.

69. The Transfer was made within two years of the Petition Date.

70. The Transfer was made to Defendants with the actual intent to hinder, delay, or defraud Debtor's creditors.

71. At the time the Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of the Transfer and on the Petition Date.

72. Debtor had been sued or threatened with suit before the Transfer occurred.

73. Debtor incurred substantial debt shortly before or shortly after the Transfer occurred.

74. The LPG Insiders caused Debtor to abscond and delay the discovery of substantial assets of the Debtor pursuant to the diversion of Debtor's funds, client files, and assets to sham entities.

75. The LPG Insiders actively concealed Debtor's assets pursuant to the diversion of funds, client files, and assets to sham entities.

76. The various sham entities, who benefitted from the receipt of funds improperly diverted away from Debtor, would be considered insiders as that term is defined in 11 U.S.C. § 101(31).

77. Debtor received less than reasonably equivalent value in exchange for the Transfer totaling $50,000.

78. The Transfer was made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfer.

79. Plaintiff alleges that Defendant and/or Doe Defendants did not receive the Transfer in good faith, for value, and without knowledge of its avoidability.

///

80. Based on the foregoing, Plaintiff may avoid the Transfer under 11 U.S.C. § 548(a)(1)(A).

81. Based on the foregoing, Plaintiff may recover and preserve the avoided transfer up to the amount of the Transfer from Defendant and/or Doe Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate under 11 U.S.C. §§ 550 and 551.

## Fourth Claim for Relief

## Avoidance, Preservation, and Recovery of Constructive Fraudulent Transfer

## 11 U.S.C. §§ 548(a)(1)(B), 550 & 551

## (Against all Defendants)

82. Plaintiff hereby incorporates by reference Paragraphs 1 through 39 and realleges these paragraphs as though set forth in full herein.

83. The Transfer was made within two years before the Petition Date.

84. Debtor did not receive reasonably value in exchange for the Transfer.

85. The Transfer was made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfer.

86. When the Transfer occurred, Debtor's business was undercapitalized and Debtor was engaged in business for which its capital was unreasonably small.

87. When the Transfer occurred, Debtor was about to incur debts that were beyond its ability to pay.

88. At the time the Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of the Transfer and on the Petition Date.

89. Plaintiff alleges that Defendant and/or Doe Defendants did not receive the Transfer in good faith, for value, and without knowledge of its avoidability.

90. Based on the foregoing, Plaintiff may avoid the Transfer under 11 U.S.C. § 548(a)(1)(B).

/ / /

/ / /

91.     Based on the foregoing, Plaintiff may recover and preserve the avoided Transfer from Defendant and/or Doe Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate under 11 U.S.C. §§ 550 and 551.

## Fifth Claim for Relief

## Disallowance of Claim

## 11 U.S.C. § 502(d)

## (Against all Defendants)

92.     Plaintiff hereby incorporates by reference Paragraphs 1 through 39 and realleges these paragraphs as though set forth in full herein.

93.     Plaintiff alleges that Defendant and/or Doe Defendants may have a claim against the Estate.

94.     Pursuant to 11 U.S.C. § 502(d), Plaintiff requests that any claim asserted by Defendant and/or Doe Defendants be disallowed unless or until the avoidable Transfer is repaid by Defendant and/or Doe Defendants.

## Prayer

WHEREFORE, Plaintiff prays for judgment against Defendant and Doe Defendants as follows:

**On the First Claim for Relief**

1.      That the Transfer be avoided under 11 U.S.C. § 544 and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07;

2.      That Plaintiff recover the avoided Transfer or a money judgment in an amount equal to the value of the avoided Transfer pursuant to 11 U.S.C. § 550;

**On the Second Claim for Relief**

3.      That the Transfer be avoided under 11 U.S.C. § 544 and Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07;

4.      That Plaintiff recover the avoided Transfer or a money judgment in an amount equal to the value of the avoided Transfer pursuant to 11 U.S.C. § 550;

/ / /

## On the Third Claim for Relief

5. That the Transfer be avoided under 11 U.S.C. § 548(a)(1)(A);

6. That Plaintiff recover the avoided Transfer or a money judgment in an amount equal to the value of the avoided Transfer pursuant to 11 U.S.C. § 550;

## On the Fourth Claim for Relief

7. That the Transfer be avoided under 11 U.S.C. § 548(a)(1)(B);

8. That Plaintiff recover the avoided Transfer or a money judgment in an amount equal to the value of the avoided Transfer pursuant to 11 U.S.C. § 550;

## On the Fifth Claim for Relief

9. That any claim of Defendant and/or Doe Defendants against the Estate be disallowed in its entirety unless or until Defendant and/or Doe Defendants timely repay the avoidable Transfer;

## On All Claims for Relief

10. That Plaintiff only recover a single satisfaction of all avoided Transfer under 11 U.S.C. § 550(d);

11. That all avoided Transfers be preserved pursuant to 11 U.S.C. § 551;

12. For prejudgment interest under state law on all fraudulent transfer claims from the date each transfer was made, as set forth in *In re Slatkin*, 525 F.3d 805, 820 (9th Cir.2008), *In re Agricultural Research and Technology Group, Inc.*, 916 F.2d 528, 541-42 (9th Cir.1990), and *Field v. Kepoikai* (*In re Maui Indus. Loan & Fin. Co.*), 483 B.R. 346, 353 (Bankr. D. Haw. 2012);

13. For pre-judgment interest on all other claims at the maximum rate allowed by law;

14. For costs incurred by Plaintiff in prosecuting this action; and

15. For such other and further relief as the Court may deem just and proper.

DATED: March 1, 2025        MARSHACK HAYS WOOD LLP

By: */s/ Chad V. Haes*
CHAD V. HAES
Attorneys for Richard A. Marshack,
Plaintiff and Trustee of The LPG Liquidation Trust

# Exhibit "1"

In re The Litigation Practice Group PC  
Disbursement Details by Payee  
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

Darlene Collins



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | 3158 | 3/31/2022 | 3/1/2022 | 1139 | 50,000.00 | |
| | | | | | | 50,000.00 | |

1 of 1                    DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts BAT Inc., Coast Processing LLC, EZ Debt Relief, Maverick Management Group, Prime Logix, The Litigation Practice Group, Vulcan Consulting Group LLC

Exhibit "1"  
Page 15